**Vernon STENBERG, Sr.,**
**Plaintiff-Appellee,**

v.

**CHEKER OIL COMPANY and Marathon Oil Company, Defendants-Appellants (two cases).**

**Nos. 76–2330 and 76–2689.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1978.

Decided and Filed April 10, 1978.

Sherwin J. Malkin, Malkin & Gottlieb, Chicago, Ill., for defendants-appellants.

Samuel D. Carpenter, Vandervoort, Cooke, McFee, Christ, Carpenter & Fisher, Battle Creek, Mich., for plaintiff-appellee.

Before CELEBREZZE, LIVELY and EN-GEL, Circuit Judges.

LIVELY, Circuit Judge.

In this consolidated appeal Cheker Oil Company (Cheker) seeks to have vacated two orders of the district court: an order granting plaintiff Stenberg's motion for a preliminary injunction and one finding Cheker in contempt. Stenberg's case is related to a longstanding dispute between Cheker and a number of its former lessees of service stations in Michigan which have been converted to company-operated stations, usually featuring self-service. See *Blaylock v. Cheker Oil Company,* 547 F.2d 962 (6th Cir. 1976).

## THE PRELIMINARY INJUNCTION

Stenberg first leased a station in Kalamazoo, Michigan from Cheker in October 1971. The lease was for one year with rent payable monthly at the rate of two cents for each gallon of gasoline sold during the month. The lease also provided for a minimum monthly rental and a cash security deposit by the lessee to guarantee the minimum rent in the event the gallonage failed to produce that amount. The lease did not set the price at which Cheker would provide petroleum products to Stenberg or require

that he purchase such products from Cheker. Stenberg was a satisfactory lessee, and when a more desirable station was constructed in Portage, Michigan, Stenberg leased it in October 1972. Except for a higher minimum rent this lease was identical to the previous lease, some terms of which had been changed in June 1972. No new lease was executed in October 1973, but Stenberg remained in possession of the Portage station and operated as before.

On February 21, 1974, Stenberg and a Cheker representative executed a "mutual termination agreement" by which the lessor-lessee relationship was ended. At the same time Stenberg was employed at a salary of $300.00 per week as the Portage station manager. Stenberg was permitted to continue to operate the station as lessee until self-service pumps were installed a few weeks later and then as manager until June 24, 1974 when he was discharged. The present action was commenced in the district court on December 11, 1974. In the complaint jurisdiction is claimed to rest on diversity of citizenship and federal questions under the Sherman and Clayton antitrust laws and the Emergency Petroleum Allocation Act of 1973 (1973 Act).

Asserting that he had been induced to enter into the lease agreement and to expend extensive efforts to develop a substantial business "by representations, express and implied, that plaintiff would be able to continue in business in said location and would not be terminated except for good cause," Stenberg sought damages for breach of contract. He also claimed damages under the 1973 Act for failure of the defendant to supply him with his allocation of gasoline, and treble damages for various antitrust violations.

The prayer of the complaint was that the court either award damages as set forth, or in the alternative, if the court should determine that damages "are speculative or impossible of reasonably accurate determination," that it issue a permanent mandatory injunction reinstating Stenberg as lessee and awarding damages for the time he was wrongfully denied the right to operate as lessee. The complaint also sought a temporary restraining order and preliminary injunction for alleged violation of the 1973 Act. Cheker filed a motion to dismiss the complaint, relying on the mutual termination agreement.

On November 13, 1975, eleven months after filing the complaint, Stenberg made a motion for entry of a preliminary injunction. The district court held a hearing on the motion on November 24–25, 1975. On August 23, 1976 the court issued an opinion and order granting a preliminary injunction. Cheker was ordered to reinstate Stenberg as lessee of the Portage station as soon as suitable provisions could be made for transfer of the salaried manager then operating the station, but in no event more than 60 days after entry of the order. The preliminary injunction was premised upon findings that Stenberg had shown a likelihood of success on the merits and that he would suffer irreparable harm if such relief were not granted. The district court made specific "preliminary" findings on a number of disputed factual issues in concluding that the plaintiff had shown a likelihood of success on the merits. Among these were somewhat contradictory findings with respect to the mutual termination agreement. The district court first found that the agreement applied only to "the interim arrangement which was to last until the equipment was available" and later found that it was void as "a product of Cheker's superior bargaining power and economic duress."

A jury was demanded in this case and ultimate determination of the merits will depend upon the jury's resolution of many factual disputes. For this reason we have stated only those facts which appear to be undisputed and proceed to a discussion of the narrow issues presented by this appeal.

Emphasizing that the motion for a preliminary injunction was filed 21 months after Stenberg was terminated as lessee and the injunction was issued nine months later, Cheker argues that the district court wrongfully used a preliminary injunction to grant ultimate relief to the plaintiff rather

than to preserve the status quo. It further points out that suit was not filed until ten months after the lease was terminated and six months after Stenberg was discharged as a station manager. Cheker also contends that Stenberg failed to establish that he would suffer irreparable harm if the injunction were denied since the only injury claimed was loss of profits from operation of the service station and resulting financial problems. Stenberg argues that the district court's findings of fact are not clearly erroneous and that there was no abuse of discretion in ordering Cheker to reinstate him as a lessee. He maintains that he was coerced to sign the mutual termination agreement and that his "last uncontested, peaceable status" was that of a lessee-dealer.

We believe the record in this case supports the decision of the district court to grant a preliminary injunction. Stenberg was not required to establish his right to an injunction "wholly without doubt," *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); the district court was required to balance the hardships in determining whether or not to grant the injunction. *Id.* at 742–43. Without in any way indicating an opinion on the merits of this case we conclude that the plaintiff demonstrated sufficient likelihood of success on the merits, as defined by this court, to justify the issuance of a preliminary injunction. See *Brandeis Machinery & Supply Corp. v. Barber-Greene Co.*, 503 F.2d 503, 505 (6th Cir. 1974). It is our further conclusion that irreparable harm may be established by a franchisee, or one situated as Stenberg, by proof of financial losses from withholding or revoking a franchise or lease. Other injuries, "not measurable entirely in monetary terms" may be included in the financial losses which result from the loss of such a business relationship. See *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970). In this case the district court made no finding of irreparable harm other than that related to loss of income. Nevertheless, the plaintiff introduced proof of such severe financial hardship that, upon finding the requisite

likelihood of success, the court could reasonably conclude that delay in granting interlocutory relief would render a later judgment on the merits meaningless. Under Stenberg's proof he would have been completely "wiped out" long before a final decision could be expected. The district court did not abuse its discretion in granting interlocutory relief.

Though our review of an order granting a preliminary injunction is limited, we are required to examine the terms of the injunction carefully to determine that the remedy fits the wrong which the district court found. This principle was clearly stated in *Consolidation Coal Co. v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261, 1267 (4th Cir.), *cert. denied*, 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971), as follows:

> Whenever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends. Particularly is this so when preliminary relief, on something less than a full record and full resolution of the facts, is granted.

The parties have contended at some length concerning the true *status quo ad litem* in the present case. Stenberg argues that he was a lessee under renewal of his last written lease by reason of Cheker's continued acceptance of rent after that lease expired. He contends that the lessor-lessee relationship continued after February 21, 1974 because the mutual termination agreement executed that date was not his voluntary act. On the other hand, Cheker maintains that Stenberg voluntarily relinquished his lease and for three months accepted the salary and other benefits of a station manager, thus establishing an employer-employee relationship as the last uncontested status of the parties.

It is not essential that we determine which relationship represented the status quo at the time this action was commenced. To do so would *require resolution of a number of important fact issues.* Where parties

to a contract have reached a misunderstanding after performance has begun it is difficult to restore them to the exact status quo which formerly existed. The prevention of irreparable harm should outweigh re-establishment of the status quo in fashioning interlocutory relief in such a case. And this should be done with a minimum of contract interpretation at the preliminary injunction stage of the proceedings. *Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 204–05 (2d Cir. 1966).

Too much concern with the status quo may lead a court into error. The proper consideration to be given the status quo question was stated in *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974), as follows:

First and foremost, we reemphasize the importance of the general requirements for a preliminary injunction. It is an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites. The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits.

It is often loosely stated that the purpose of a preliminary injunction is to preserve the status quo. *See, e. g., Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 5 Cir. 1971, 441 F.2d 560; *Miami Beach Federal Savings & Loan Association v. Callander*, 5 Cir. 1958, 256 F.2d 410. Indeed, some such notion may have influenced the district judge in this case, since he wrote of a "status quo that would normally be entitled to temporary protection." It must not be thought, however, that there is any particular magic in the phrase "status quo." The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. If often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, *Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 9 Cir. 1953, 207 F.2d 190, by the issuance of a mandatory injunction, *see* 7 Moore's Federal Practice ¶ 65.04[1], or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.

In the present case the condition which threatened the district court's "ability to render a meaningful decision after a trial on the merits" was the imminent financial ruin of the plaintiff. This was the only irreparable harm disclosed by the record. The district court found, on the basis of substantial evidence, that Stenberg's salary of $300.00 per week as station manager was about as much as he would have been able to make as a dealer-lessee under conditions which existed in 1976 when the injunction issued. We conclude that the preliminary injunction which the district court issued exceeded the requirements for preserving its ability to proceed meaningfully to a final judgment on the merits. This could have been accomplished by ordering Stenberg restored to his salaried position as manager of the Portage station. Such an order would have avoided premature resolution of sharply disputed factual issues. Furthermore the court would be relieved of the necessity to exercise continuing oversight of a lease which has expired by its own terms, and if renewed by law, was ostensibly ended by a mutual termination agreement. See *Unicon Management Corp. v. Koppers Co., supra*, 366 F.2d at 205. It was error for the district court to fail to tailor the exceptional remedy of a preliminary injunction to the requirements of this case.

The preliminary injunction entered by the district court is vacated. This cause is remanded to the district court for entry of a preliminary injunction which requires Cheker to reinstate Stenberg to his position as manager of the Portage, Michigan ser-

vice station at a salary comparable to that being paid managers of other company-owned stations of comparable size and sales volume, but in no event, less than $300.00 per week. Stenberg is to have all fringe benefits received by other similarly situated station managers. Unless good cause for his discharge is demonstrated Stenberg shall be entitled to continue as manager until final determination of the issues in this case.

## THE CONTEMPT ORDER

When Cheker failed to reinstate Stenberg as lessee after 60 days he filed a petition to find Cheker in contempt. After a hearing the district court found Cheker in contempt of its August 23, 1976 order granting the preliminary injunction. The court directed fines to be paid by Cheker in the amount of $5,000 per day for each day after actual receipt of the contempt order that it failed to comply with the injunction. In addition the president of Cheker and its attorney were each ordered to pay fines of $1,000 per day for each day that they failed to comply with the injunction. The order then went on to broaden the previously issued injunction by directing Cheker not to collect minimum monthly rents from Stenberg during pendency of the law suit, not to collect the $1,000 security deposit required by the last written lease between the parties, not to interfere with Stenberg's operation of the service station "in any way" and not to collect a tankwagon price of more than 51.6 cents per gallon of regular gasoline sold Stenberg, including rent of two cents per gallon. The matter of price was to be reconsidered by the court following a review of "the entire situation" three months later. The order also directed Cheker to pay Stenberg $1,500 as attorney fees for the contempt proceedings.

The entire contempt order relates to the failure of Cheker to reinstate Stenberg *pendente lite* as lessee of the Portage station, a requirement which we have found to be unwarranted. Furthermore, the contempt order seeks to impose obligations on Cheker which were not contained in the lease be-

tween the parties and to relieve Stenberg of some of the obligations which he undertook to perform. We vacated similar provisions in *Blaylock v. Cheker Oil Co., supra.* In addition, the contempt order requires continuing supervision by the district court. This order was improvidently entered. The contempt order which the district court entered on November 30, 1976 is reversed and vacated in its entirety.

This action is remanded to the district court for further proceedings consistent with this opinion. No costs are awarded. The parties will bear their own costs on this appeal.