PAW PAW WINE DISTRIBUTORS,
INC., et al., Plaintiffs,

v.

JOSEPH E. SEAGRAM & SONS, INC.,
et al., Defendants.

No. G84–911 CA

United States District Court,
W.D. Michigan, S.D.

Feb. 28, 1985.

Frederick M. Baker, Jr., Willingham, Cote', Hanslovsky, Griffith & Foresman, East Lansing, Mich., for plaintiffs.

Stephen D. Turner, Dykema, Gossett, Spencer, Goodnow & Trigg, Grand Rapids, Mich., for Seagram & Distillers.

Stephen G. Schafer, Jaffe, Snider, Raitt & Heuer, P.C., Detroit, Mich., for O'Donnell Importing.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Paw Paw Wine Distributors and Dixon Distribution Company had been direct distributors of wines produced by The Wine Spectrum brands.[1] Paw Paw was a licensed distributor of several of these brands for twenty-five years. Dixon was licensed to distribute some brands for as long as thirty years. The most recent agreements between The Wine Spectrum and the plaintiffs were in writing and for a term of one year. Each agreement was to expire on February 29, 1984. In 1983, Seagram, Inc. acquired certain wineries owned by The Wine Spectrum. Subsequent to these acquisitions, Seagram conducted a review of the Michigan market for the former Wine Spectrum products.

On February 1, 1984, the president of Seagram, Richard Maher, notified Paw Paw and Dixon that, effective March 1, 1984 all sales would be on a month-to-month basis. The letter stated:

This is to notify you that The Seagram Wine Company, as successor to The Wine

---

1. These brands include Paul Masson, Taylor California Cellars, Great Western, Taylor New York, and Monterey.

Spectrum, is reviewing all distribution arrangements on former Wine Spectrum brands. No date has been put on the completion of this review. Because of this, effective March 1, 1984, all of our sales of the former Wine Spectrum brands to you will be on a month-to-month basis. We will be in touch with you as this review progresses.

In addition to the written agreements, Paw Paw had an oral agreement for the distribution of "imported fine wines." [2]

It appears that the relationship between Seagram and the plaintiffs continued from March until June, 1984. On June 21 Seagram informed them by mailgram that "effective today, your distribution rights in the State of Michigan for the brands listed below are hereby withdrawn." The brands specified in the mailgram are those covered by the written agreement with Seagram's predecessor. The oral agreement covering the imported fine wines was terminated on July 3, 1984 when Seagram ordered its master distributor for the state, O'Donnell Importing Company, not to sell these wines to Paw Paw.

This action was filed on July 18, 1984 alleging breach of contract, violation of the Michigan Wine Franchise Act, unreasonable termination, and unjust enrichment. Now before the Court is a motion filed by the plaintiffs for a preliminary injunction.

This dispute is complicated by plaintiffs' claim that the Wine Franchise Act, which was enacted on June 26, 1984, applies to their contractual relationship with Seagram. The Act, M.C.L.A. § 436.30a., *et seq.*, confers a variety of rights and remedies upon wine suppliers, such as Seagram, and wine wholesalers, such as the plaintiffs. Specifically, the plaintiffs allege that § 436.30c.(32), authorizing injunctive relief, requires courts to issue injunctions upon a showing that the Act has been violated, without regard to the traditional standards for injunctive relief. Alternatively, the plaintiffs allege that this court should apply the balancing of hardships test applied by the Second Circuit in *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir.1970), contending that there is a relaxation of the irreparable harm requirement in dealer termination cases. Upon thorough consideration, the Court concludes that the traditional standards for injunctive relief apply to this case. The Court further concludes that the plaintiffs have failed to demonstrate that these standards are met, and their request is denied.

## DISCUSSION

a. Injunctions under the Wine Franchise Act.[3]

Injunctive relief is authorized under the Act by § 436.30c.(32), which states:

Upon proper application to the court, a supplier or wholesaler may obtain injunctive relief against any violation of this act. If the court grants injunctive relief or issues a temporary restraining order, bond shall not be required to be posted.

The plaintiffs contend that Seagram violated the Act's requirements that termination be for cause, and then only after a notice period. *See* § 436.30c.(7). They argue that the language authorizing relief for "any violation of this section" evidences a legislative intent to make injunctive relief more freely available.

The Court notes that the statute is silent as to *when* injunctive relief should be granted. It merely says that such relief "may" be granted upon a showing that the Act has been violated. The plaintiffs cite 42 Am.Jur.2d, Injunctions, § 38, p. 776 in support of their position. However, that section makes clear that courts may disregard the traditional standards only "where specified conditions are made to appear."

---

**2.** These brands include Barton & Geister, Brolio, Bersano, Ricasoli, Kindermann and Mumms.

**3.** The Wine Franchise Act was enacted five days after the plaintiffs received notice purporting to terminate their distribution agreements. There is some question whether the Act applies to the agreements at all, a question this Court need not resolve now. For present purposes, the Court holds only that the Act would not change the result reached here.

The Court does not discern that the legislature has imposed a positive duty to grant injunctive relief under this section.

The plaintiffs also rely on *Henderson v. Burd*, 133 F.2d 515 (2d Cir.1943), where the district court's issuance of a preliminary injunction under the Emergency Price Control Act was upheld. That court stated, "Where an injunction is authorized by statute it is enough if the statutory conditions are satisfied." 133 F.2d at 517. However, the U.S. Supreme Court reached the opposite result in a subsequent case when passing on the same statutory provision in *Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). The statute in *Hecht Co.* provided:

> Upon a showing that such person has engaged or is about to engage in any such act or practice, a permanent or temporary injunction or decree or restraining order shall be granted without bond.

50 U.S.C. § 925 (repealed 1956). That statute includes language couched in terms more mandatory than the statute at issue here. Yet the Court indicated a strong preference for maintaining flexibility when passing on requests for equitable remedies. In light of that preference, the Court held that when Congress intends to depart from traditional equity practice, its intention must be made unambiguous. This rule continues to apply. *E.E.O.C. v. Anchor Hocking Corp.*, 666 F.2d 1037, 1043 (6th Cir.1981).

Although it is clear, as plaintiffs argue, that the legislature intended to authorize injunctions for violations of the Act, it is not clear that it intended to depart from the traditional equity requirements. At the motion hearing in this matter, plaintiffs' counsel conceded that courts do have discretion to issue injunctive relief.[4] When asked by the Court when that discretion should be exercised in a movant's favor, counsel suggested that injunctions should issue when serious violations occur. The Court finds nothing in the statute to support this construction. Accordingly, the Court will not imply a legislative intent to depart from the traditional injunctive standards.

b. The *Semmes* standard.

The plaintiffs also allege that *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir.1970) establishes a lower threshold for injunctive relief in dealer termination cases. Unlike the situation in the present case, termination of a dealership, such as the automobile dealership in *Semmes*, is tantamount to termination of a business altogether. In that situation the courts do not appear to have eliminated the requirement of irreparable harm. The threat of harm in such cases is made clear by the nature of the business relationship. *Accord Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978) (applying *Semmes* where a terminated gas station lessee sought a preliminary injunction against oil company). The Second Circuit has established that in all cases, preliminary injunctive relief is available only where the movant has established proof that there is no adequate remedy at law. *Jack Kahn Music v. Baldwin Piano and Organ*, 604 F.2d 755, 762 (2d Cir.1979).

For the reasons that follow, this Court has concluded that plaintiffs have not carried the burden of demonstrating irreparable harm.

c. The traditional standards.

■ The traditional standards for preliminary injunctive relief are:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

---

**4.** Transcript of hearing on plaintiffs' motion for preliminary injunction, held December 11, 1984

at pp. 12–13.

4) Whether the public interest would be served by issuing a preliminary injunction.

*Usaco Coal Corp. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir.1982). The single most important consideration is whether the movant is likely to suffer irreparable injury if the injunction is not granted, thereby impairing the Court's ability to fashion an effective remedy. Wright and Miller; Federal Practice and Procedure: Civil § 2948.

■ There is no proof before the Court indicating that damages are an inadequate remedy. The president of Paw Paw, Raymond M. Schincariol, submitted an affidavit wherein he predicts the termination will cause a decrease in sales and shelf space. Dixon's secretary-treasurer, David Dixon, stated in his affidavit that his distributorship will lose customers for whom Dixon has developed a market for Seagram wines. Both Paw Paw and Dixon contend that, although they continue to sell other brands, the loss of the Seagram wines diminishes their ability to provide a "full-line" service to their customers.

However, the plaintiffs have presented no proof that they cannot obtain Seagram wines from other Michigan distributors, rather than directly from Seagram. O'Donnell, Seagram's master distributor in this state, claims this is possible. In fact, Dixon infers that the wines are available from other sources but at higher prices. The Court concludes from this that the plaintiffs are not precluded from maintaining their full-line service. It appears to have become more expensive to do so as a result of Seagram's conduct, a consequence which may ultimately be an item of damages. But the plaintiffs have failed to establish irreparable harm. Accordingly, this Court is of the opinion that damages are adequate. *Accord Gordon's Wine Distributing Co., Inc. v. Almaden Vineyards, Inc.*, No. G83–1076, slip op. (W.D.Mich. Jan. 9, 1984).

The plaintiffs having failed to establish that damages are inadequate, the Court need not consider the other equitable considerations. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 103 (6th Cir.1982); *Triebwasser and Katz v. American Telephone and Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir.1976). Accordingly, plaintiffs' motion for a preliminary injunction is denied.