785 F.2d 307
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EVERETT AKERS, et al., Plaintiffs-Appellees,
v.
CHARLOTTE BALDWIN, SECRETARY OF NATURAL RESOURCES, AND
ENVIRONMENTAL PROTECTION CABINET, et al.,
Defendants, and FALCON COAL COMPANY, et
al., Intervening Defendants-Appellants.
 85-5211
 United States Court of Appeals, Sixth Circuit.
 1/27/86
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 BEFORE: KENNEDY and KRUPANSKY, Circuit Judges; and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The district court in the proceedings below entered a preliminary injunction in favor of plaintiffs-appellees, a class of surface landowners, enjoining defendant public officials under certain circumstances from issuing permits to conduct surface coal mining operations and further ordering the revocation of certain other previously issued permits. Several coal companies, intervenors in the litigation below, appealed that order and the denial of related motions to this court. Intervenors-Appellants' primary issue on appeal centers on the applicability of the states' immunity from suit under the Eleventh Amendment to the United States Constitution. For the reasons explicated below, this court declines at this time to address the Eleventh Amendment issues, but does partially dissolve the district court's preliminary injunction predicated upon other considerations. The court notes the parties' respective positions with regard to the effect of the Eleventh Amendment in passing only.
 
 
 2
 This action for declaratory and injunctive relief was initiated pursuant to the provisions of the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. Sec. 1201 et. seq., Pub. L. 95-87. SMCRA provided for a two-tiered approach to regulation of the environmental impacts of surface coal mining operations. During the initial regulatory program, 30 U.S.C. Sec. 1252, the state regulatory authority and Secretary of Interior, acting through the federal Office of Surface Mining Reclamation and Enforcement, jointly enforced certain of the environmental performance standards of SMCRA with respect to coal mining operations within a particular state. Under the permanent regulatory program, the state regulatory authority may become the primary agency responsible for administering the federal act by submitting and receiving approval of a state program that incorporates laws and regulations consistent with and in accordance with the provisions of the federal act and regulations of the Secretary of Interior. 30 U.S.C. Sec. 1253. If a particular state fails to submit a state program regulating surface coal mining and reclamation operations by the end of the eighteen month period following enactment of SMCRA, or fails to timely resubmit an acceptable state program after disapproval of a proposed state program, or fails to implement, enforce, or maintain its approved state program, the Secretary of Interior is directed to promulgate and implement a federal program for that state. If a state fails to enforce part of its approved program, the Secretary also has authority to provide for federal enforcement of that part of the state program not being enforced by the state. 30 U.S.C. Sec. 1254. The Commonwealth of Kentucky Natural Resources and Environmental Protection Cabinet sought and received approval under 30 U.S.C. Sec. 1253 of its state program on May 18, 1982.
 
 
 3
 SMCRA's enabling provision, 30 U.S.C. Sec. 1260, sets out the requirements for approval by the appropriate regulatory authority of permits for surface coal mining operations, including the following:
 
 
 4
 (b) Requirements for approval
 
 
 5
 No permit or revision application shall be approved unless the application affirmatively demonstrates and the regulatory authority finds in writing on the basis of the information set forth in the application or from information otherwise available which will be documented in the approval, and made available to the applicant, that----
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 (6) in cases where the private mineral estate has been severed from the private surface estate, the applicant has submitted to the regulatory authority----
 
 
 9
 (A) the written consent of the surface owner to the extraction of coal by surface mining methods; or
 
 
 10
 (B) a conveyance that expressly grants or reserves the right to extract the coal by surface mining methods; or
 
 
 11
 (C) if the conveyance does not expressly grant the right to extract coal by surface mining methods, the surface-subsurface legal relationship shall be determined in accordance with State law: Provided, That nothing in this chapter shall be construed to authorize the regulatory authority to adjudicate property rights disputes.
 
 
 12
 30 U.S.C. Sec. 1260(b)(6).
 
 
 13
 As further background to the instant dispute, the Kentucky legislature in 1984 promulgated legislation concerning deeds purporting to govern the legal relationship between surface and subsurface owners where a mineral estate has been severed from the surface estate. The legislation, known as House Bill 32, provided:
 
 
 14
 381.940 Rules of construction for mineral deeds relating to coal extraction
 
 
 15
 In any instrument heretofore or hereafter executed purporting to sever the surface and mineral estates or to grant a mineral estate or to grant a right to extract minerals, which fails to state or describe in express and specific terms the method of coal extraction to be employed, or where said instrument contains language subordinating the surface estate to the mineral estate, it shall be held, in the absence of clear and convincing evidence to the contrary, that the intention of the parties to the instrument was that the coal be extracted only by the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed, and that the mineral estate be dominant to the surface estate only for the purposes of coal extraction by the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed.
 
 
 16
 Ky. Rev. Stat. Sec. 381.940 (effective date July 13, 1984).
 
 
 17
 Plaintiffs Everett Akers, Joe Begley, Joe Whitaker, Chalmer Hicks, and Rose Marie Hicks, individually and on behalf of all others similarly situated, brought this action against Charlotte Baldwin, Secretary of the Kentucky Natural Resources and Environmental Protection Cabinet, and Robert Knarr, Commissioner of the Department for Surface Mining Reclamation and Enforcement within the state Cabinet, in their respective official capacities, pursuant to 30 U.S.C. 1270(a)(2).[1] Plaintiffs challenged the alleged failure of the state Cabinet to implement and enforce the requirements of 30 U.S.C. Sec. 1260(b)(6)(C) and 30 C.F.R. Sec. 778.15 with respect to issuance of surface mining permits. Specifically, the plaintiffs alleged in their complaint that the Cabinet had issued surface coal mining permits to applicants under circumstances where the surface and mineral estates had been severed and where there had been interposed a timely objection before the Cabinet by surface owners to the existence of a right to enter and surface mine by the private mineral estate owner or his lessee. Further, plaintiffs charged that the defendants had systematically issued surface coal mining permits to applicants where the private surface and mineral estate had been severed and the conveyance did not expressly grant the right to conduct surface mining without requiring copies of the document of conveyance and without requiring documentation of legal authority that under applicable state law the conveyance supported such a right.
 
 
 18
 Plaintiffs moved the district court for a preliminary injunction to enjoin the state regulatory authority from issuing coal mining permits in violation of 30 U.S.C. Sec. 1260(b)(6)(C) and for certification of a plaintiff class of affected surface landowners. Intervenors-appellants, several coal companies operating within Kentucky, successfully intervened and asserted a constitutional challenge to House Bill 32. An evidentiary hearing was conducted on the motion for preliminary injunction on February 22, 1985. On February 28, the district court entered its finding of facts, conclusions of law, and order granting the preliminary injunction.
 
 
 19
 The district court found that all relevant factors weighed in favor of plaintiffs and emphasized the substantial probability of plaintiffs' success on the merits. The court concluded that it was doubtful that the provisions of 30 U.S.C. Sec. 1260 could reasonably be construed in the manner urged by the state and intervening defendants. The district court accorded House Bill 32 a presumption of constitutionality pending a final determination of its constitutionality. The district judge recognized the substantial financial loss that would result to the State of Kentucky and the intervenor coal companies from the issuance of a preliminary injunction, but reasoned that both Congress and the Kentucky legislature had certainly considered such consequences in the legislative process and that the intervenor-defendants had waived an opportunity to challenge House Bill 32 subsequent to its enactment through a declaratory action.
 
 
 20
 The terms of the district court's preliminary injunction restrained the defendants from issuing permits to conduct surface coal mining operations in cases where the private mineral estate had been severed from the private surface estate until the applicant had submitted to defendants either: (a) the written consent of the surface owner to the extraction of coal by surface mining methods, or (b) a conveyance which expressly granted or reserved the right to extract the coal by surface mining methods, or implicitly granted such right, applying the presumptions enacted in Ky. Rev. Stat. Sec. 381.940. Further, the district court's preliminary injunction ordered and enjoined defendants 'to revoke all permits issued since July 13, 1984, which were granted in violation of such criteria, upon the request of any affected surface landowner.' The district court in the exercise of its discretion declined to order the plaintiffs to post a bond for the preliminary injunction, which it acknowledged would amount to millions of dollars given the potential costs that could accrue to the state and intervenor coal companies, based on the fact that plaintiffs sought enforcement of remedial legislation which was designed to protect the small landowner and the environment.
 
 
 21
 On appeal, intervenors-appellants argued that the district court's grant of the preliminary injunction contravened the Eleventh Amendment by seeking to compel state officials to conform their conduct to the requirements of state law as embodied in Kentucky's state program approved pursuant to SMCRA. Intervenors-appellants additionally characterized the preliminary injunctive relief as an abuse of the district court's discretion. They urged that the district court's order to the extent that it revoked previously granted mining permits constituted retroactive relief proscribed by the Eleventh Amendment, and, independently, was inconsistent with the purpose of preliminary injunctive relief of maintaining the status quo. Finally, intervenors-appellants objected to the district court's failure to join affected permit holders.
 
 
 22
 Plaintiffs-appellees initially challenged intervenors-appellants' standing to raise an Eleventh Amendment defense. They additionally argued that Congress abrogated participant states' immunity to suit by passage of SMCRA and that Kentucky, by submitting a state program, had waived its immunity. They further contended that even if the Eleventh Amendment impacted on the district court's preliminary injunction, it was sustainable as a proper order to compel the state officials to comport their actions with federal law. Plaintiffs-appellees suggested that the revocation order was not impermissibly retroactive in effect nor inconsistent with preservation of the present condition of surface lands. Finally, they reasoned that joinder of all affected parties was unnecessary in the context of a public rights action.
 
 
 23
 The district court, in an order of April 29, 1985, entered approximately two months after the preliminary injunction was in place, certified to the Supreme Court of Kentucky the question of whether and to what extent House Bill 32 was valid under the Kentucky Constitution. This court is of the opinion that the Kentucky state court determination is integral to its consideration of the merits of this cause of action with respect to the applicability of the Eleventh Amendment and the propriety of the preliminary injunction. This court therefore withholds its decision as to the substantive Eleventh Amendment issues pending a disposition of the state constitutional issue by the Kentucky Supreme Court. This court addresses only the validity of that part of the district court's preliminary injunction revoking previously issued permits and the intervenors-appellants' contention regarding joinder of parties.
 
 
 24
 The standard of review on appeal from the grant or denial of a preliminary injunction is limited to a determination whether the district court abused its discretion. Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.), cert. dismissed, ---- U.S. ----, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985). Four factors are considered in determining whether a grant or denial of preliminary injunctive relief constituted an abuse of discretion: (a) the likelihood of success on the merits of the action; (b) the irreparable harm that could result without the requested relief; (c) the impact on the public interest; and (d) the possibility of substantial harm to others. Id. In view of the limited scope of review, the appellate court does not consider the merits of the case further than necessary to determine whether the district judge abused his discretion in granting or denying the preliminary injunction. Mason County Medical Association v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977).
 
 
 25
 This court does not at this juncture pass on the question whether the grant of the preliminary injunction in itself was an abuse of the district court's discretion, independent of any Eleventh Amendment analysis. It is apparent, however, that the section of the district court's order revoking permits issued between July 13, 1984 through the effective date of the preliminary injunction where violative of the order's criteria amounted to an improvident exercise of the district court's discretion. The general function of a preliminary injunction is to maintain the status quo pending determination of an action on its merits. Blaylock v. Cheker Oil Co., 547 F.2d 962, 965 (6th Cir. 1976). As in Blaylock, the district court's order in the case at bar 'went far beyond freezing the parties in their positions at the time this action was commenced.' Id. The preliminary injunction not only served to induce Kentucky officials to alter their practices in ruling on future permit applications, but also purported to undo past actions which had already become final. The court is therefore constrained to dissolve that retroactive section of the district court's order as inconsistent with the purpose of preliminary injunctive relief.
 
 
 26
 Intervenors-appellants also asserted that the district court abused its discretion in granting the preliminary injunction without requiring the joinder of coal mine operators whose permits were affected. This court notes initially that the result reached above with respect to the retroactive relief allays many of the concerns underlying the joinder issue with respect to current holders of issued permits. Beyond that observation, however, this court finds the assertion to be without merit. Plaintiffs-appellees in the case sub judice sued in the district court to compel compliance by the Kentucky state agency with federal law and did not sue mining operators directly. Courts have long recognized that there is little need for traditional rules governing joinder of parties where the proceeding involves the future protection and enforcement of public rights. See, e.g., National Licorice Co. v. NLRB, 309 U.S. 350, 363, 60 S.Ct. 569, 577, 84 L.Ed. 799 (1940). Moreover, intervenors-appellants would appear to adequately represent absent interests.
 
 
 27
 Accordingly, the order of the district court awardingplaintiffs-appellees preliminary injunctive relief is REVERSED and DISSOLVED insofar as it enjoins the revocation of permits issued since July 13, 1984 through the date of entry of the order.
 
 
 28
 Edwards, dissenting.
 
 
 29
 This case was heard before Judge Bertelsman in the U.S. District Court for the Eastern District of Kentucky and he issued a preliminary injunction. A copy of the preliminary injunction at issue follows:
 
 
 30
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 
 31
 The issues in this case are numerous. Appellants attack Judge Bertelsman's injunction basically on two grounds: First, that the Kentucky statute which has recently been approved and which the federal agency is seeking to enforce would result in depriving the mineowers of property without due process of law. Secondly, appellant-intervenors (mineowners) claim they have standing to raise eleventh amendment claims as a jurisdictional bar and that a jurisdictional objection and bar can be raised at any time, even sua sponte, in or by this court.
 
 
 32
 I read Judge Bertelsman's injunction somewhat differently than do the mineowners and their lawyers. The injunction against issuing permits to conduct surface coal mining where the mineral estate has not been severed from the surface estate clearly does not operate retroactively nor does it result in any deprivation of property without due process of law. The basic federal statute, as well as the recently adopted Kentucky statute dealing with this problem, both appear to me to operate in futuro and to be within the constitutional authority of the United States and the State of Kentucky respectively.
 
 
 33
 The temporary enjoining of surface mining of coal under permits issued between July 13, 1984 and February 28, 1985 does not, as I see the matter, operate retroactively since its practical effect is simply to stop further surface mining until the underlying dispute in this case has been finally adjudicated. To be sure it will prevent further removal of overburden to get at coal seams by surface mining but this effect is clearly prospective in its prevention of removal of coal from the ground. I see no merit to the argument that parties who hold permits which may have been illegally issued should be allowed to continue to extract coal while this litigation is proceeding. If this litigation results in a judgment favorable to intervenors-appellants Falcon Coal, et al. and defendants-appellees, the coal in dispute will still be in place in the ground and available for extraction.
 
 
 34
 Two cases seem to me to illustrate the proper approach to our current problem. One is Judge Lively's opinion in Stenberg v. Checker Oil Co., 573 F.2d 921 (6th Cir. 1978), the other is Canal Authority of Florida v. Callaway, 489 F.2d 567 (5th Cir. 1974). Both of these cases involve a preliminary injunction to prevent irreparable injury. The critical principle established in Stenberg is summarized in a strong sentence 'The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.' 573 F.2d at 925 (quoting Canal Authority of Florida, 489 F.2d at 576). In my view, Judge Bertelsman has properly employed the authority of a court of equity to effect this result pending final adjudication.
 
 
 35
 As to the Eleventh Amendent argument, I simply do not think that it is currently ripe for adjudication.
 
 
 
 [1]
 30 U.S.C. Sec. 1270 provides in relevant part:
 Sec. 1270. Citizens suits
 (a) Civil action to compel compliance with this chapter
 Except as provided in subsection (b) of this section, any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this chapter--
 * * *
 (2) against the Secretary or the appropriate State regulatory authority to the extent permitted by the eleventh amendment to the Constitution where there is alleged a failure of the Secretary or the appropriate State regulatory authority to perform any act or duty under this chapter which is not discretionary with the Secretary or with the appropriate State regulatory authority.
 The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties.
 30 U.S.C. Sec. 1270(a)(2).