Theresa M. **BECKER**, Plaintiff,

v.

Jennifer **GRANHOLM**, et al., Defendants.

No. 03–CV–70429.

United States District Court, E.D. Michigan, Southern Division.

July 21, 2003.

Patrick T. Gillen, Ann Arbor, MI, for Plaintiff.

D.J. Pascoe, Assistant Attorney General, Public Employment & Elections Division, Lansing, MI, for Defendants.

*ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND DENYING DEFENDANTS' MOTION FOR ABSTENTION OR STAY OF PROCEEDINGS*

STEEH, District Judge.

Plaintiff Theresa Becker moves for a preliminary injunction enjoining defendants Michigan Governor Jennifer Granholm, Michigan Treasurer Douglas Roberts, Executive Director of the Michigan Higher Assistance Authority and Michigan Higher Education Student Loan Authority H. Jack Nelson, and Michigan Director of the Office of Scholarships and Grants Diane Todd Sprague, from denying plaintiff's 2003 Michigan Competitive Scholarship on the basis that plaintiff is enrolled in a college program of study leading to a degree in theology. Defendants move for abstention or a stay of these proceedings based on a similar lawsuit pending in Michigan's Court of Claims, and/or the release of Governor Granholm's 2004 budget. For the reasons set forth below, defendants' motion for abstention or a stay will be DENIED. Plaintiff's motion for a preliminary injunction will be GRANTED.

## I. Background

Plaintiff Theresa Becker, a student at Ave Maria College in Ypsilanti, Michigan, alleges she was awarded and received a $2,750.00 Michigan Competitive Scholarship pursuant to M.C.L. § 390.971 *et seq.* in 2001 and 2002, and was informed on June 11, 2002 that she qualified for the scholarship in 2003. Plaintiff alleges she was informed the same day that her scholarship was withdrawn because she was

enrolled in a course of study leading to a degree in theology, M.C.L. § 390.977 provides in part:

> An applicant awarded a first-year scholarship or a renewal scholarship shall not be restricted in the choice of the institution in this state which he or she desires to attend if the institution is approved by the state board of education. An applicant awarded a first-year scholarship or a renewal scholarship shall not be restricted in the choice of the course of study he or she wishes to pursue, except that *a scholarship award shall not be made to a student enrolled in a program of study leading to a degree in theology, divinity, or religious education.*

M.C.L. § 390.977(1) (emphasis added). Plaintiff filed a complaint on January 31, 2003 alleging the withdrawal of her scholarship violates: (1) the Free Exercise Clause of the First Amendment; (2) the Establishment Clause of the First Amendment; (3) her right to freedom of expression and association under the First Amendment; and (4) the Equal Protection Clause of the Fourteenth Amendment. Defendants filed a motion for abstention/stay on April 18, 2003. Plaintiff filed her motion for a preliminary injunction on April 24, 2003. The parties stipulated that defendants would be given until June 2, 2003 to file their response to the motion for a preliminary injunction. A hearing on the motions was held on June 23, 2003.

## II. Defendants' Motion for Abstention/Stay

■ Defendants argue the court should abstain from exercising jurisdiction over this matter under the abstention doctrine articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) because another earlier lawsuit pending in the Michigan Court of Claims, filed by one Jordan Patrick, likewise challenges the scholarship restrictions of M.C.L. § 390.977(1). As noted by the court at the June 23, 2003 hearing, the *Colorado River* abstention doctrine is inapplicable because the requirement of a "parallel state proceeding" is lacking where, as here, the state and federal lawsuits involve different parties. *See Crawley v. Hamilton County Commissioners,* 744 F.2d 28, 31 (6th Cir.1984). Further, the factors used in deciding whether to abstain under the *Colorado River* doctrine, as applied, do not overcome the "balance heavily weighed in favor of the exercise of jurisdiction": (1) federal constitutional law provides the basis for this litigation (as opposed to state law); (2) the state court has not assumed jurisdiction over a *res* or property; (3) this federal forum is no less convenient than the state forum; (4) abstention would not avoid "piecemeal litigation" (in that this is a separate lawsuit from the state action); and (5) the state court's earlier exercise of jurisdiction does not deprive this court of federal jurisdiction. *Id.* at 31. Defendants' argument that the court should stay these proceedings until Governor Granholm releases her 2004 budget, and decides whether to continue the Michigan Competitive Scholarship Program, is not well taken because the decision to withdraw plaintiff's scholarship was made on June 11, 2002 for the 2003 budget year; Governor Granholm's 2004 budget decisions will not render plaintiff's claims moot. Defendants' motion for abstention or stay will be denied.

## III. Plaintiff's Motion for a Preliminary Injunction

■ Whether to issue a preliminary injunction lies within the discretion of the district court. *CSX Transp., Inc. v. Tennessee State Bd. of Equalization,* 964 F.2d 548, 552 (6th Cir.1992). Generally, the court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant

would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others: and (4) whether a preliminary injunction would be in the public interest. *G & V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071. 1076 (6th Cir.1994) (citing *International Longshoremen's Ass'n v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.1991)), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 38 (1991). A district court must make specific findings concerning each of the four factors unless fewer are dispositive of the issue. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). "Where a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 710 (6th Cir.2002) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998)). This is because the loss of a First Amendment right constitutes irreparable harm as a matter of law. *Connection Distrib.*, 154 F.3d at 288. Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *G & V. Lounge, Inc.*, 23 F.3d at 1079).

▪ The determinative factor in deciding whether plaintiff Becker is entitled to preliminary injunctive relief is the likelihood that she will ultimately prevail on her constitutional claims at trial. Recently, the United States Supreme Court granted a petition for a writ of certiorari to hear an appeal from the Ninth Circuit's decision in *Davey v. Locke*, 299 F.3d 748 (9th Cir. 2002), *cert. granted*, —— U.S. ——, 123 S.Ct. 2075, 155 L.Ed.2d 1059 (2003), in which a 2–1 majority held on summary judgment that a Washington statute reading: "No aid shall be awarded to any student who is pursuing a degree in theology", and the Washington Higher Education Coordinating Board's ("HECB") policy of denying $1,200.00 to $1,500.00 "Promise Scholarships" to otherwise qualified students solely· because they were pursuing a degree in theology, infringes the Free Exercise Clause of the First Amendment.

We conclude that HECB's policy lacks neutrality on its face. It makes the Promise Scholarship (which is neutral toward religion) available to all students who meet generally applicable criteria, except for those who choose a religious major. As this classification facially discriminates on the basis of religion, it must survive strict scrutiny. We are not persuaded that it does; Washington's interest in avoiding conflict with its own constitutional constraint against applying money to religious instruction is not a compelling reason to withhold scholarship funds for a college education from an eligible student just because he personally decides to pursue a degree in theology. Accordingly, we hold that HECB impermissibly deprived Davey of his scholarship.

*Davey*, 299 F.3d at 750. The *Davey* dissent would hold that the theology degree restriction does not "substantially burden" a student's right to practice his or her religion, and is rationally related to the legitimate purpose of separation of church and state. *Id.* at 763–764. Whether plaintiff Becker is likely to prevail on the merits of her constitutional claims turns on the likelihood that the Supreme Court will affirm *Davey* [1].

---

**1.** Plaintiff argues that, even if the Supreme Court reverses the decision in *Davey*, which found a violation of the Free Exercise Clause of the First Amendment, it is likely she may still prevail on her First Amendment Establishment Clause and freedom of expression and association claims, and her Fourteenth

Defendants argue the Supreme Court's granting of certiorari in *Davey*, of itself, precludes this court from determining whether it is likely or not that *Davey* will be affirmed. The court disagrees. The likelihood of whether the Supreme Court will affirm *Davey* may reasonably be discerned by examining Supreme Court precedent.

In particular, the Supreme Court held in *Good News Club v. Milford Central School*, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001), that a New York public school violated the free speech rights of student members of the Good News Club, a private Christian organization, by excluding the Club from meeting after hours at the school where the facility was otherwise available for use to "social, civic and recreational meetings and entertainment events, and other uses pertaining to the welfare of the community, provided that such uses shall be nonexclusive and shall be opened to the general public." *Id.* at 102, 121 S.Ct. 2093. The interim school superintendent denied the Club's request to use the school cafeteria for "singing songs, hearing a Bible lesson and memorizing scripture" because the proposed activity was "the equivalent of religious worship." *Id.* at 103, 121 S.Ct. 2093. Relying on *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (holding that refusal to pay university funds to one student publication because the publication addressed issues from a religious perspective constituted unlawful viewpoint discrimina-

tion in violation of the Free Speech Clause) and *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (holding that exclusion of a private group from presenting films at a school based on the films' religious perspective constituted unlawful viewpoint discrimination in violation of the Free Speech Clause), the Court, with Justice Thomas writing for the five member majority, held that the school's exclusion of the Good News Club based on its religious nature was indistinguishable from the exclusions in *Rosenberger* and *Lamb's Chapel*, likewise constituting unlawful viewpoint discrimination. *Good News Club*, 533 U.S. at 107, 121 S.Ct. 2093. In rejecting the school's argument that it was required by the Establishment Clause to deny the Club's application, Justice Thomas wrote:

> [W]e have held that "a significant factor in upholding governmental programs in the face of Establishment Clause attack is their *neutrality* towards religion." *Rosenberger*, 515 U.S. at 839, 115 S.Ct. 2510, 132 L.Ed.2d 700 (emphasis added). *See also Mitchell v. Helms*, 530 U.S. 793, 809, 120 S.Ct. 2530, 147 L.Ed.2d 660, (2000) (plurality opinion) ("In distinguishing between indoctrination that is attributable to the State and indoctrination that is not, [the Court has] consistently turned to the principle of *neutrality*, upholding aid that is offered to a broad range of groups or persons without regard to their religion" (emphasis added)); *id.*, at 838, 530 U.S. 793, 120

Amendment Equal Protection Clause claim. The *Davey* majority found "it is not necessary to reach Davey's claims that HECB's policy abridges other constitutional rights as well." *Davey*, 299 F.3d at 760. The dissenting opinion "recogniz[ed] that the First and Fourteenth Amendments circumscribe a state's ability to interfere with an individual's exercise of religion", concluding "that Washington has successfully navigated the tensions

between the free exercise of religion and the prohibition of its endorsement." *Id.* at 761, 768. This court is convinced that, should the the Supreme Court reverse *Davey*, it will address all the constitutional theories of recovery. This court is not persuaded that, should the Supreme Court reverse *Davey* on the Free Exercise clause issue, plaintiff's other "constitutional claims" are nonetheless likely to be successful on their merits.

S.Ct. 2530, 147 L.Ed.2d 660 (O'CON-NOR, J., concurring in judgment) ("[N]eutrality is an important reason for upholding government-aid programs against Establishment Clause challenges"). Milford's implication that granting access to the Club would do damage to the neutrality principle defies logic. For the "guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse." *Rosenberger, supra,* at 839, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700.

*Id.* at 114, 121 S.Ct. 2093. The *Good News Club* majority also reasoned that, because the school's facilities were made available to the general public, there was no realistic danger that the community would think that the state vis-a-vis the school district was endorsing religion or any particular creed. *Id.* at 113, 121 S.Ct. 2093. The majority concluded that "[w]hen Milford denied the Good News Club access to the school's *limited public forum* on the ground that the Club was religious in nature, it discriminated against the Club because of its religious viewpoint in violation of the Free Speech Clause of the First Amendment." *Id.* at 120, 121 S.Ct. 2093 (emphasis added). Chief Justice Rehnquist, and Justices O'Connor, Scalia, and Kennedy, joined Justice Thomas' opinion.

The *Davey* majority relied upon *Good News Club, Rosenberger,* and *Lamb's Chapel* in deciding that the Washington statute and the HECB's policy denying college scholarships to students pursuing a degree in theology was unconstitutional. "[T]he purpose of the Promise Scholarship program is broad: to fund the educational pursuits of outstanding students. For this reason, administration of the Scholarship must be viewpoint neutral[.]" *Davey,* 299 F.3d at 752 (citing *Rosenberger* ). "[O]nce

the state of Washington decided to provide Promise Scholarships to all students who meet objective criteria, it had to make the financial benefit available on a viewpoint neutral basis." *Davey,* 299 F.3d at 755.

The disfavored viewpoint in *Rosenberger* was religion, as it is here, and the risk from state disapproval of the religious pursuits of its students is the same. In any event, to the extent that *Rosenberger*'s rationale turns on the Court's treatment of funds as a **limited public forum**, the Court subsequently indicated in *Legal Services Corp. v. Velazquez,* 531 U.S. 533, 544, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001), that limited forum cases such as *Rosenberger, Lamb's Chapel* [,] and *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), are instructive in subsidy cases as well. **The bottom line is that the government may limit the scope of a program that it will fund, but once it opens a neutral "forum" (fiscal or physical), with secular criteria, the benefits may not be denied on account of religion.** *See also Good News Club,* 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151[ ] (2001).

*Davey,* 299 F.3d at 756 (bold emphasis added). Applying a strict scrutiny standard, the *Davey* majority reasoned that the State of Washington had less than a compelling state interest in precluding students from receiving a $1,500.00 yearly scholarship in that no state money was awarded directly to a sectarian school, and students were permitted to make their own choices regarding how to spend the scholarship money, making it "difficult to see how any reasonably objective observer could believe that the state was applying state funds to religious instruction or to support any religious establishment by allowing an otherwise qualified recipient to keep his Scholarship." *Id.* at 760.

"[W]here a government aid program is neutral with respect to religion, and provides assistance directly to a broad class of citizens who, in turn, direct government aid to religious schools wholly as a result of their own genuine and independent private choice, the program is not readily subject to challenge under the Establishment Clause." *Zelman v. Simmons–Harris*, 536 U.S. 639, 652, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002) (cited in *Davey*, 299 F.3d at 760). Chief Justice Rehnquist, writing for the five member majority in *Zelman*, concluded that a viewpoint neutral Ohio scholarship program enacted for the valid secular purpose of aiding economically disadvantaged children in a failing public school system did not violate the Establishment Clause, even though 96% of the participants were, of their own choice, enrolled in religious schools. *Id.* at 647, 662–663, 122 S.Ct. 2460. The five member majority in *Zelman*—Chief Justice Rehnquist, and Justices O'Connor, Scalia, Thomas, and Kennedy—were the same five member majority in *Good News Club* and *Rosenberger*.

This court is persuaded it is substantially likely that the same five member majority in *Zelman*, *Good News Club*, and *Rosenberger*, will affirm the majority opinion in *Davey*, and, consequently, that it is substantially likely that plaintiff Becker will prevail on the merits of her constitutional claims at trial. Defendants do not dispute that, should *Davey* be affirmed, the decision will be controlling here. Affirmance of *Davey* would almost certainly dictate findings here that: (1) the Michigan Competitive Scholarship program is a limited public forum having a valid secular purpose; (2) the theology, divinity, and religious education restrictions in M.C.L. § 390.977(1) fail the constitutional requirement of neutrality; (3) the statutory re-

strictions constitute unlawful viewpoint discrimination; and (4) granting scholarships to students pursuing theology, divinity, or religious education degrees would not pose a realistic danger that the State of Michigan is reasonably perceived as endorsing religion or any particular creed in that money is not awarded directly to a sectarian school, but instead is available to a broad class of Michigan students who otherwise qualify for the scholarship and who, in turn, make their own personal choices as to what degree they will pursue. Defendants' reliance on Article 8, § 2 of the Michigan Constitution for the proposition that they have a compelling state interest in maintaining a separation of church and state is not convincing.[2]

Having determined that plaintiff is substantially likely to prevail on the merits of her constitutional claims, the court finds plaintiff is entitled to preliminary injunctive relief. *Detroit Free Press*, 303 F.3d at 710; *Connection Distrib.*, 154 F.3d at 288. "The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir.1978). A district court is thus empowered to compel a defendant to correct an injury already inflicted by first defining the "status quo," being the last peaceable uncontested status that existed before the dispute arose. *Montgomery v. Carr*, 848 F.Supp. 770, 779 (S.D.Ohio 1993). Defining the status quo serves to preserve the parties' positions to prevent irreparable injury prior to trial. *Id.*

The last peaceable, uncontested status that existed before this dispute arose was when plaintiff was notified on June 11, 2002 that she was qualified to receive a Michigan Competitive Scholarship. De-

**2.** The court note that Article 8, § 2 of the Michigan Constitution speaks to aid to "pre-

elementary, elementary, or secondary school", not college funding.

fendants have been forthright in apprising the court that, although funding for 2003 scholarships remains available, that funding will be gone as of October 1, 2003. As defendants point out, the Eleventh Amendment would bar this court from granting plaintiff retroactive relief in the form of money damages after October 1, 2003. *See Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir.2002). The court is not, however, barred by the Eleventh Amendment from issuing an injunction that prevents a continuing unconstitutional administration of a public fund. *Id.* Thus, the court may enjoin the defendants from continuing to enforce the theology, divinity, and religious education degree restrictions of M.C.L. § 390.977(1) as applied to plaintiff, prior to October 1, 2003, requiring defendants to pay plaintiff her 2003 scholarship.

Requiring defendants to pay plaintiff prior to a ruling in *Davey* or a trial on the merits, however, would not preserve the status quo. Rather, the appropriate injunctive relief is to enjoin the defendants from continuing to enforce the theology, divinity, and religious education degree restrictions of M.C.L. § 390.977(1) as applied to plaintiff by paying plaintiff's 2003 scholarship funds into an interest bearing escrow account until a final decision is made as to the merits of plaintiff's claims. Such an order will preserve this court's ability to render a meaningful decision following a final adjudication of plaintiff's claims on their merits. *Stenberg,* 573 F.2d at 925.

### IV. Conclusion

Defendants' motion for abstention or a stay of these proceedings is hereby DENIED. Plaintiff's motion for a preliminary injunction is hereby GRANTED to the extent that defendants are hereby ENJOINED from enforcing the theology, divinity, and religious education degree re-

strictions of M.C.L. § 390.977(1), as applied to plaintiff, and are further ORDERED to place the funds representing plaintiff's 2003 scholarship[3] into an interest bearing escrow account until further order of the court.

SO ORDERED.

---

3. Plaintiff's Counsel represented at the hearing that the amount would be $2,300.00.