**JEROME–DUNCAN, INC., a Michigan Corporation, Plaintiff,**

v.

**AUTO–BY–TEL, L.L.C., a California Limited Liability Company, and Auto–By–Tel Marketing Corporation, a Delware Corporation, Defendants.**

Civil Action No. 97–40160.

United States District Court,
E.D. Michigan,
Southern Division.

May 29, 1997.

Sharon M. Woods, Barris, Sott, Denn & Driker, Detroit, MI, Lawrence C. Atorthy, MacDonald & Goren, Birmingham, MI, for plaintiff.

Thomas J. Tallerico, Howard & Howard, Bloomfield Hills, MI, for defendants.

## *ORDER*

GADOLA, District Judge.

Before the court is plaintiff, Jerome–Duncan Inc.'s motion for a temporary restraining order ("TRO") and/or a preliminary injunction filed on May 22, 1997. This is essentially a breach of contract action between JDI, which is a Ford dealership located in Sterling Heights and defendant, Auto–By–Tel[1] ("ABT"), which operates a web site on the Internet through which it refers Internet users who want to buy Ford vehicles to various dealers.[2] In June of 1996 JDI entered into a five year contract with ABT to be the exclusive dealer to which referrals were made in the counties of Wayne, Oakland, Macomb or Washtenaw. The contract gave each party the right to terminate the agreement on 30 days notice. Thereafter, ABT desired to renegotiate the terms of the contract. JDI declined this offer. By letter dated April 22, 1997, ABT gave notice that it was terminating the contract effective, May 24, 1997. On May 22, 1997, JDI filed the instant motion to, *inter alia*, enjoin ABT from terminating the agreement between ABT and JDI. On May 23, 1997, ABT responded to said motion by facsimile. This court conducted a telephone conference on May 23, 1997 in which it denied JDI's motion for a TRO for failure to show a likelihood of success on the merits or irreparable harm.

### Discussion

■ The Sixth Circuit has established that a party seeking a preliminary injunction must demonstrate (1) that there is a substantial likelihood that it will prevail on the merits; (2) that it will suffer irreparable harm in the absence of an injunction; (3) that the threatened injury to the moving party outweighs the threatened harm to others; and (4) that the requested relief will serve the public interest. *Forry, Inc. v. Neundorfer Inc.*, 837 F.2d 259, 262 (6th Cir.1988). A preliminary injunction is an extraordinary remedy which should best be used sparingly. *Van Deventer v. Michigan National Bank*, 172 Mich.App. 456, 462, 432 N.W.2d 338, *lv. denied*, 432 Mich. 907 (1988); *Oleson's Food Stores v. Local 876, UFCW*, 797 F.Supp. 591, 593 (W.D.Mich.1991).

### Likelihood of Success on the Merits

■ The Sixth Circuit has stated that a plaintiff must demonstrate a strong or substantial likelihood or probability of success. *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 35 (6th Cir.1992).

In order for JDI to succeed on the merits, it must show that the June 1996 contract is a franchise agreement governed by the Michigan Franchise Investment Law ("MFIL"), M.C.L. §§ 445.1501 et seq. which provides that a franchise agreement permitting termination except for good cause is void. If the MFIL does not govern, then the express contractual language will govern which provides that the agreement may be terminated at either party's sole option and for any

1. Actually, there are two defendants. Auto–By–Tel, L.L.C., a California corporation with which JDI initially contracted and which was subsequently dissolved and succeeded by Auto–By–Tel Marketing Corporation, the other defendant, which is a Delaware corporation. For purposes of this motion, it is sufficient that the court refer to the defendants collectively as ABT.

2. There is also an issue as to whether North Bros. Ford, Inc., a Michigan corporation, is a properly named defendant in this action. That issue, however, is not before the court at this time.

reason whatsoever, at any time, by providing the other party 30 days' written notice.

As set forth in the MFIL:

"Franchise" means a contract or agreement, either express or implied, whether oral or written, between 2 or more persons to which all of the following apply:

(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor;

(b) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate;

(c) the franchisee is required to pay, directly or indirectly, a franchise fee.

M.C.L. § 445.1502(3).

At the outset, this court notes that nowhere in the agreement is the word "franchise" used. While not dispositive, it is clearly probative of what type of agreement was reached. *See James v. Whirlpool Corp.*, 806 F.Supp. 835 (E.D.Mo.1992) (applying the MFIL).

Plaintiff argues that since 1) the contract states that ABT will provide a "marketing program" to attract potential purchasers and identify them to the dealer and that the dealer in turn will respond to those potential purchasers within 24 hours, 2) ABT trained one of JDI's employees, and 3) there was a limited area in which JDI would be the authorized ABT dealer, ABT has effectively established a marketing plan. However, JDI is primarily a Ford dealership. In fact, it is the largest dealership in the Metro–Detroit area, doing over 130 million dollars in sales, including over 500 new car sales, per year. Its marketing is controlled by Ford and not ABT. ABT is simply a new component in its marketing plan which may be responsible for, at most, 3% of its gross revenue or 12 new cars sold per month. JDI has been in the business of selling Ford cars since 1956.

It can not be said that JDI's marketing plan is prescribed in substantial part by ABT. Accordingly, it is likely that JDI will not succeed on the first prong of the franchise definition.

Plaintiff will also likely fail on the second prong of the franchise definition. JDI points to the fact that ABT requires its service mark to be displayed in certain JDI print advertisements. However, such "evidence" is *de minimis* in light of the fact that JDI is primarily a Ford dealership and admittedly does not often run print advertisements. Notably, ABT does not require JDI to run such advertisements. As such, it can not be said that JDI engages in a business substantially associated with the ABT mark.

Because this court finds that JDI is not likely to succeed on the first two prongs of the franchise definition under the MFIL, it need not address the third prong.

**Irreparable Harm**

Even if this court had found that JDI was likely to succeed on the merits, JDI has not established irreparable harm. JDI primarily relies on *Stenberg v. Cheker Oil Co.*, 573 F.2d 921 (6th Cir.1978) wherein the Court stated that "irreparable harm may be established by a franchisee, or one situated as Stenberg, by proof of financial losses from withholding or revoking a franchise or lease." *Id.* at 924. However, the *Stenberg* Court went on to say that:

the plaintiff introduced proof of such severe financial hardship that, upon finding the requisite likelihood of success, the court should reasonably conclude that delay in granting interlocutory relief would render a later judgment on the merits meaningless. Under Stenberg's proof he would have been completely "wiped out" long before a final decision could be expected. Even if this court assumed that the agreement in question is a franchise agreement.

*Id.* at 924. It cannot be said that JDI is in a similar position to Stenberg. First, this court has not found that JDI will likely succeed on the merits. Second, there is no indication that JDI will be "wiped out" or even significantly affected by the termination

of the agreement either in terms of revenue (since it grosses +130 million dollars annually) or in goodwill (since it has been established since 1956 and has only dealt with ABT for less than one year).

The instant facts are not even as compelling as the facts in *Joyce Beverages of N.Y., Inc., v. Royal Crown Cola*, 555 F.Supp. 271, 280 (S.D.N.Y.1983) wherein the court found that no irreparable harm would result. *Id.* at 280. In *Joyce*, the franchisee, a soft drink bottler, sought to enjoin the franchisor from terminating the franchise agreement to distribute cola products. The termination of the agreement would require the franchisee to shift to distributing another line of cola products. The court found that while there may be a slight disruption of part of the franchisee's business, there would certainly be no destruction of any aspect of its business. *Id.*

In the instant case, the facts are even less compelling in indicating irreparable harm since JDI would, so it appears likely, continue to sell hundreds of new Ford vehicles each month, without even a slight disruption in its business.

JDI also argues that a finding of irreparable harm is appropriate since damages will be difficult to calculate due to the new medium of the Internet, i.e. it is difficult to predict how much the Internet will grow in the next 4 years. This argument, however, is hollow. Should a determination of damages be required at a latter date, a court could look to JDI's past performance or the performance of other similarly situated dealers or the actual dealers which received the referrals in place of JDI. There is nothing unique about this case, with regard to damages, which would take it out of the ordinary breach of contract remedies context. In *Rosenfeld v. W.B. Saunders*, 728 F.Supp. 236 (S.D.N.Y.1990), the court stated that:

> [w]hile the Court has the discretion to permit injunctive relief for breach of contract, the classic remedy for breach of contract is an action at law for damages. If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and no irreparable harm may be found

as a matter of law.... [T]he mere necessity of making an informed approximation of damages should not preclude the adequacy of a legal remedy.

*Id.* at 244.

Since this court finds that JDI has failed to establish a likelihood of success on the merits or irreparable harm, it need not address the remaining two prongs of the preliminary injunction test.

**THEREFORE IT IS HEREBY ORDERED** that plaintiff, Jerome–Duncan Inc.'s motion for a temporary restraining order and/or preliminary injunction is **DENIED**.

**SO ORDERED.**