**CELLNET COMMUNICATIONS, INC.,
a Michigan Corporation, Plaintiff,**

v.

**NEW PAR, d/b/a Verizon Wireless, a Delaware Partnership, Verizon Wireless (VAW) LLC, a Delaware Limited Liability Company, and Airtouch Cellular Eastern Region, LLC, a Delaware Limited Liability Company, Defendants.**

No. CIV. 03–40244.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 13, 2003.

Barry M. Rosenbaum, Seyburn, Kahn, Southfield, Irwin M. Alterman, Kemp, Klein, Troy, MI, for Cellnet Communications, Incorporated, plaintiff.

William A. Sankbeil, Joanne G. Swanson, Kerr, Russell, Detroit, for New Par dba Verizon Wireless, Verizon Wireless (VAW) L.L.C., Airtouch Cellular Eastern Region, L.L.C., defendants.

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

GADOLA, District Judge.

Before the Court is Plaintiff's motion for a preliminary injunction. Plaintiff seeks to enjoin Defendants from terminating a contract and to require Defendants to provide service to Plaintiff's customers. A hearing was held on this motion on October 24, 2003. The Court concludes that irreparable injury will not occur in the absence of a preliminary injunction. The Court also concludes that, when balanced, the four factors used to evaluate a motion for a preliminary injunction do not warrant the issuance of an injunction. Accordingly, the Court will deny the motion for a preliminary injunction.

## I. BACKGROUND

The plaintiff in this action is Cellnet Communications, Incorporated ("Cellnet"). Cellnet's Second Amended Complaint seeks confirmation of an arbitration award, declaratory judgment of its contract rights, specific performance of the contract in accordance with the arbitration award, and injunctive relief. 2d Am. Compl. at 4–6. The three Defendants are New Par (doing business as Verizon Wireless), Verizon Wireless LLC, and Airtouch Cellular Eastern Region, LLC (collectively, "New Par").

Cellnet is a reseller of Verizon Wireless cellular telephone service. A reseller is "an independent business that purchases cellular service from a cellular carrier at wholesale, and resells it to an end-user generally at rates similar to, and in competition with, the carrier." Pl's Br. at 4. A "reseller guarantees payment to the carrier for the end user's cellular service" and "undertake[s] all risks and the other costs associated with providing service, such as marketing, billing, collections, [and] customer service." Id. Plaintiff Cellnet is a reseller of Verizon Wireless service pursuant to a 1986 "Reseller Agreement," which was assigned to Defendant New Par.

Cellnet also acts as a reseller of cellular telephone services for another company, Cingular Wireless. Additionally, Cellnet acts as an agent or subagent for wireless telephone services provided by Nextel, Sprint, AT & T, and T–Mobile (formerly VoiceStream Wireless). As an agent, Cellnet receives commissions and does not undertake the risks like a reseller does. Cellnet claims that "the emphasis" has been on the Reseller portion of its business. Pl's Br. at 7. New Par claims that Cellnet's "resale of New Par services constitutes only a small percentage of its business." Def's Resp. at 4.

The 1986 Reseller Agreement between Plaintiff Cellnet and Defendant New Par states that New Par will provide wireless services at a discounted rate to Cellnet, which Cellnet can in turn·sell to customers. The agreement allegedly allows Cellnet to participate in all promotions offered by New Par. New Par's current standard Reseller Agreement does not provide for participation in such programs or the rate discounts that the 1986 Reseller Agreement provides. The 1986 Reseller Agreement further states that it may only be terminated for cause.

The 1986 Reseller Agreement also requires that the parties arbitrate "any dispute arising out of or in connection with" the agreement. Pursuant to this provision, Cellnet filed for arbitration seeking past damages and specific performance of certain terms of the contract on June 15, 2001. In the same arbitration, New Par submitted a counterclaim for Cellnet's failure to pay a certain chargeback under an addendum to the contract. The extensive arbitration proceeding resulted in an award to both Cellnet and New Par on September 12, 2003.

The arbitrator found that New Par "has breached the Reseller Agreement by failing to offer [Cellnet] participation in special promotions and programs; not permitting [Cellnet] to offer all Verizon retail rates; and not properly applying the applicable discount to those rates." Award at ¶ 13. The arbitrator also found that "this conduct resulted in a loss of customers to" Cellnet. Id. The arbitrator concluded that "as a proximate result of this breach [Cellnet] was damaged in the amount of $3,750,000.00." Id. The arbitrator awarded this amount plus interest payments of $513.70 per day until payment. Award at ¶ 14. As an "additional remedy" because "the loss of customers is directly attributable" to New Par's breach, the arbitrator

determined that for two years after the date of the award, Cellnet will be deemed to have a customer base over 15,000, and for nine months to have over 125 "net ads" per month. Award at ¶ 15. These numbers affect the rates Cellnet pays to New Par for wireless telephone services.

The arbitrator also found that Cellnet "did not fulfill" a provision of a contract addendum that required Cellnet "to provide 12,000 additional subscribers during the first year after the addendum was entered." Award at ¶ 16. If this requirement were not met, the addendum provided that New Par could "charge back" to Cellnet. *Id.* New Par did so by an invoice on May 8, 2000 for $1,092,560.00. *Id.* The arbitrator awarded to New Par this sum plus interest of $149.67 per day. *Id.*

Cellnet filed an action in the Circuit Court of Oakland County, Michigan on September 16, 2003 to confirm the arbitration award. After the case was filed, New Par sent a termination notice for the 1986 Reseller Agreement to Cellnet. The cause that allegedly permits New Par to terminate the agreement was Cellnet's failure to pay the chargeback, which was part of the arbitration award. *Id.* New Par also claims other grounds for termination of the contract, including materially changed circumstances and its right to terminate a contract of infinite duration at will. The termination notice was effective immediately as to new customers. The termination letter offered to continue servicing Cellnet's existing customers under the terms of the 1986 Reseller Agreement until December 1, 2003. In the letter New Par also offered to purchase the subscriber base, to enter into a new reseller agreement, or into an agent agreement. Cellnet claims that the 1986 Reseller Agreement contains special, favorable terms that are not included in any of the other offered contracts.

After receiving the termination notice, Cellnet amended its complaint to include a claim to enforce the 1986 Reseller Agreement. In state court, the parties entered into a stipulated order that has been extended in this Court until November 14, 2003. This order temporarily requires the parties to continue performing the contract as it was being performed before the arbitration award.

Defendants removed the case to this Court. Jurisdiction is proper in this Court because the parties are completely diverse, as the Notice of Removal demonstrates. Cellnet now comes before this Court seeking a preliminary injunction to enjoin Defendants from terminating the 1986 Reseller Agreement and to require that Defendants perform under the agreement.

The Court also notes that on November 24, 2003, "wireless number portability" will begin, pursuant to a mandate by the Federal Communications Commission. "Wireless number portability" will enable customers to keep the same phone number while changing service providers. Service providers will have to be able to transition customers from one service to another. This change may result in greater competition in the industry, but the parties disagree about the effects this change will have on the contract and on Cellnet's business.

## II. LEGAL STANDARD

When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the preliminary injunction; (3) whether issuance of the preliminary injunction would cause substantial harm to others; and (4) whether

the public interest would be served by issuance of the preliminary injunction. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir.2003) (citation omitted).

■ These four factors "are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir.2003) (citation omitted). This Court "is not required to make specific findings concerning each of the four factors used in determining a motion for a preliminary injunction if fewer factors are dispositive of the issue." *Jones*, 341 F.3d at 476 (citations omitted). Although the absence of irreparable injury may be dispositive of the issue, this Court will examine each of the four factors.

## III. ANALYSIS

### A. REVIEW OF THE FOUR FACTORS

### 1. Whether Plaintiff would suffer irreparable injury without the preliminary injunction

■ The Court will first address the issue of irreparable injury. In general, to obtain a preliminary injunction, the injury that would result in the absence of the injunction must be irreparable, not merely substantial. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Irreparable injury is defined as "[a]n injury that cannot be adequately measured or compensated by money." *Black's Law Dictionary* 789–90 (7th ed.1999). The Supreme Court has stated that

[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson*, 415 U.S. at 90, 94 S.Ct. 937 (emphasis in original, internal quotation and citation omitted). The Sixth Circuit has also noted that "a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). If the "*nature* of plaintiff's loss would make damages difficult to calculate," then an injury is not "fully compensable by money damages." *Id.* (emphasis added). This does not mean that whenever monetary damages are difficult to calculate that the injury is irreparable. Rather, the very "nature" of the loss must be inherently difficult to calculate.

■ Cellnet argues that it will suffer irreparable injury if a preliminary injunction does not issue because it will lose customers, will suffer a decline in its ability to compete for new and existing customers, and will lose its customers' goodwill. Cellnet also argues that the special features of the 1986 Reseller Agreement will make it difficult or impossible to calculate monetary damages for these injuries. Cellnet provides a declaration by its President. In this declaration, the President claims that being an agent or a standard reseller of New Par's services "is not an adequate substitute" for the 1986 Reseller Agreement. Decl. at ¶ 18–19. Additionally, the President claims that "Cellnet would not be able to mitigate its damages and preserve its customer base" and will be unable to "compete or survive" unless the 1986 Reseller Agreement is enforced. *Id.* at ¶ 20.

Having considered the President's declaration as well as Cellnet's brief, exhibits, and the statements made at oral argument, the Court cannot conclude that these damages are irreparable or that the situa-

tion is as dire as Cellnet alleges. The Court notes that Cellnet has survived even though New Par has previously been in breach of the contract. The arbitration award indicates that this breach was reducible to a monetary award. Furthermore, this Court has reasoned that

> while the Court has the discretion to permit injunctive relief for breach of contract, the classic remedy for breach of contract is an action at law for damages. If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and no irreparable harm may be found as a matter of law … [t]he mere necessity of making an informed approximation of damages should not preclude the adequacy of a legal remedy.

*Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 966 F.Supp. 540, 541 (E.D.Mich. 1997) (Gadola, J.) (quoting *Rosenfeld v. W.B. Saunders,* 728 F.Supp. 236 (S.D.N.Y. 1990)).

Cellnet also argues that it will lose customer goodwill through an inability to provide Verizon service. Cellnet argues that Verizon service is qualitatively better than its competitors. This qualitative difference, Cellnet argues, would result in irreparable injury if the agreement were terminated. The Court notes, however, that New Par has offered to provide service to Cellnet under a different reseller agreement or through an agent relationship. Cellnet claims that the pricing in these offered agreements are inadequate. Cellnet, however, could accept one of these agreements and provide service to customers through these agreements at a higher cost to Cellnet. If Cellnet subsequently prevailed on the merits of its contract claims, then the difference in costs between the 1986 Reseller Agreement and the new agreement could be awarded in damages. This indicates that the injury caused by the allegedly wrongful termination of the contract can at least be mitigated and any remaining injury would seem to be reducible to monetary damages.

The Court concludes that although the injury might be substantial and the damages difficult to calculate, the injury is not irreparable. The absence of irreparable injury makes the issuance of a preliminary injunction inappropriate. This factor weighs heavily against the issuance of a preliminary injunction.

### 2. Whether Plaintiff has a strong likelihood of success on the merits

The Court will next examine Plaintiff's likelihood of success on the merits. "[A] plaintiff must demonstrate a strong or substantial likelihood or probability of success." *United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 35 (6th Cir.1992). A likelihood of success is not sufficient to meet this standard; Plaintiff must demonstrate that the likelihood is "substantial."

■ In this case, Cellnet must demonstrate a substantial likelihood of proving that New Par does not have a right to terminate the 1986 Reseller Agreement. New Par claims a right to terminate the agreement based on default, materially changed circumstances, and its right to terminate a contract of infinite duration at will. In assessing the merits of these intricate issues of contract interpretation without ruling upon them, the Court determines that Cellnet has not met its burden in demonstrating a substantial likelihood or probability of success. Accordingly, this factor does not favor the issuance of an injunction.

Cellnet argues that if the Court confirms the arbitration award, then the 1986 Reseller Agreement must remain in effect and cannot be terminated for the alleged

default of June 8, 2000. While there may be a likelihood that the Court would confirm the arbitration award, confirmation of the arbitration award does not entail that contract performance must be enforced.

The arbitration award provides for specific terms during the continued performance of the contract. Specifically, the award requires that for two years after the date of the award, Cellnet is deemed to have a customer base over 15,000, and for nine months to have over 125 "net ads" per month. These numbers affect the rates Cellnet pays to New Par for services. The award, however, does not explicitly require the parties to perform under the contract for a fixed period of time.

Critical to the analysis of Plaintiff's likelihood of success on the merits is the fact that New Par has a strong argument that it is entitled to terminate the contract. The plain language of the arbitration award states that "no provision of the [1986] Reseller Agreement ... has been modified, waived, or released by either party." Award at ¶ 7. This would include the provisions regarding default, which accordingly remain effective. The 1986 Reseller Agreement provides that "[f]ailure of the Reseller [Cellnet] to pay *any sum owed* to [New Par] hereunder when due and the continuance thereof for 30 days after written notice" "shall constitute a 'Default.'" Agreement at ¶ 5(a)(1) (emphasis added). The arbitration award found that an amount of $1,092,560.00 "is due and *owing*" to New Par. Award at ¶ 16 (emphasis added). The plain language of the award and the language of the agreement suggest that the amount owed, which New Par provided written notice for, constitutes a default as of June 8, 2000. This argument further suggests that Cellnet has not demonstrated a substantial likelihood of success on the merits.

Cellnet argues that New Par cannot terminate the agreement based on the amount owed as of June 8, 2000(1) because of merger, (2) because the payment is not untimely, (3) because of waiver by New Par, (4) equitable estoppel, and (5) laches. Having reviewed these arguments, the Court concludes that Cellnet has not demonstrated a substantial likelihood of success on the merits. Even if there is a likelihood of success, this likelihood is not substantial. The arguments of both parties regarding the contract claims have merit. The Court therefore concludes that this factor does not favor the issuance of an injunction.

### 3. Whether issuance of the preliminary injunction would cause substantial harm to others

■ It appears that no third party would be substantially harmed by the issuance of a preliminary injunction in this matter. If an injunction issued, cellular service to customers would continue and would be unaffected by the injunction.

In evaluating this factor, the Court may also consider harm to defendants. *Ramik v. Darling Int'l, Inc.*, 161 F.Supp.2d 772, 778 (E.D.Mich.2001) (Gadola, J) (citation omitted). Defendant New Par would arguably be adversely affected by an injunction insofar as it would be required to provide services at a discounted rate under the 1986 Reseller Agreement that it seeks to terminate. Depending on the outcome, this provision could result in lost profits to Defendant. Such economic harm, however, would not constitute substantial harm to New Par. Accordingly, the Court concludes that issuing an injunction in this case would not cause substantial harm to others.

### 4. Whether the public interest would be served by issuance of the injunction

This Court has previously noted that "in most cases, the 'public interest' factor

seems negligible." *Ramik*, 161 F.Supp.2d at 778. This case is no exception. Cellnet argues that the public interest would favor an injunction in this case by preventing New Par from eliminating market competition, since competition is in the public's interest. Pl's Br. at 24. Cellnet also argues that the public has an interest in enforcing contracts and arbitration awards. *Id.*

In contrast, New Par argues that termination of the contract favors competition and better serves the public interest. Def's Resp. at 20. New Par argues that the public would be better served if Cellnet accepted a standard reseller contract with New Par and was treated "on even footing" with other resellers. *Id.* This would allegedly result in greater competition among resellers.

Finally, the parties have both argued that public interest in market competition would be served by their position. Such speculation about future market competition does not seem to tip the balance in favor of either party.

■ The Court concludes that the public interest favors neither party. The public interest in enforcing contracts encompasses enforcing the terms of a contract that allow a party to terminate that contract. Both parties essentially seek enforcement of the contract, but differ in their interpretations of how the contract should be enforced. The same argument applies to the enforcement of the arbitration award. Similarly, the market competition arguments are not compelling for either party. The Court therefore concludes that this factor favors neither party.

## B. Balancing the Four Factors

As this Court has previously noted, "[t]he purpose of a preliminary injunction is to preserve the status quo for trial." *Ramik*, 161 F.Supp.2d at 778. The Su-

preme Court and the Sixth Circuit have noted that "the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir.1997). The Sixth Circuit, however, has advised that "a preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir.2002) (citation omitted). Additionally, this "extraordinary" remedy "should best be used sparingly." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 966 F.Supp. 540, 541 (E.D.Mich.1997) (Gadola, J.) (citations omitted). Although a preliminary injunction in this case would preserve the status quo, the Court concludes that Cellnet has not persuaded the Court that this situation merits such an extraordinary remedy.

■ In this case, Cellnet has not carried its burden of demonstrating that the four factors above, when balanced, "clearly demand" a preliminary injunction. *Overstreet*, 305 F.3d at 573. Plaintiff Cellnet has not proven that the injury that would result without an injunction is irreparable; this factor therefore weighs heavily against issuing an injunction. The other three factors do not overcome this factor. Cellnet has not met its burden in demonstrating a substantial likelihood of success on the merits. The public policy factor favors neither party. Issuing an injunction would not harm others, but this factor does not overcome the lack of irreparable injury and a failure to demonstrate a substantial likelihood of success on the merits.

Accordingly, this Court will deny the motion for a preliminary injunction.

### C. Posting of a bond

As the Court will deny the motion for a preliminary injunction, the Court does not need to address the issue of a security pursuant to Rule 65 of the Federal Rules of Civil Procedure.

### IV. CONCLUSION

Plaintiff has not sufficiently demonstrated that the extraordinary remedy of a preliminary injunction is warranted in this case. Because the Court concludes that irreparable injury will not occur in the absence of an injunction and that the four factors, when balanced, do not warrant an injunction, this Court will deny the motion for a preliminary injunction.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's motion for a preliminary injunction [docket entry 7] is **DENIED.**